**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

KERRY KOTLER,

                              Plaintiff,

    v.                                            No. 10-CV-136
                                                    (TJM/DRH)

WENDY DABY, Correction Officer, Adirondack
Correctional Facility; PAUL WOODRUFF,
Captain, Adirondack Correctional Facility;
ARTHUR ROCQUE, Lieutenant, Adirondack
Correctional Facility; BRIAN FISCHER,
Commissioner, NYS DOCS; D. VENETTOZZI,
Acting Director of Special Housing/Inmate
Disciplinary Program for DOCS; and NORM
BEZIO, Director of Special Housing/Inmate
Disciplinary Programs for DOCS,

                                Defendants.

---

**APPEARANCES:**                                  **OF COUNSEL:**

KERRY KOTLER
Plaintiff Pro Se
97-A-6645
Gowanda Correctional Facility
Post Office Box 311
Gowanda, New York 14070

HON. ERIC T. SCHNEIDERMAN             AARON M. BALDWIN, ESQ.
Attorney General for the                      Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER
U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Plaintiff pro se Kerry Kotler ("Kotler"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that the DOCS Commissioner and five DOCS employees violated his constitutional rights under the First and Fourteenth Amendments.  Compl. (Dkt. No. 1).  Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. Nos. 5, 10.  Kotler opposes the motion.  Dkt. No. 7.  For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

The facts are related herein in the light most favorable to Kotler as the non-moving party. See Ertman v. United States, 165 F.3d 204, 206 (2d Cir.1999).

On May 11, 2007, Kotler was transferred to the Adirondack Correctional Facility ("Adirondack") after previously being incarcerated at both Bare Hill Correctional Facility ("Bare Hill") and Franklin Correctional Facility ("Franklin").  Id. ¶ 6(A), 6(G) n.2.  Upon admission, Kotler was housed in a large room with approximately twenty other inmates.  Id. ¶ 6(B).  On May 15, 2007, defendant Daby, a corrections officer, approached Kotler, asking him to place all of his personal belongings in his foot locker.  Id.  ¶¶ 6(C)-(D).  Kotler could not fit all of his legal materials into the locker, of which he informed Daby.  Id.  ¶ 6(F).  Daby replied that she was aware that Kotler "had all the legal papers because he was a snitch and . . . that she knew all about him suing the guys over at Franklin and Bare Hill."  Id. ¶6(G) (internal quotation marks omitted).  Daby also stated that "she did not want [a] snitch around [and] that should would have [Kotler] out of [Adirondack] by the end of the day."  Id.

2

¶ 6(H) (internal quotation marks omitted).  Kotler then returned to his cell.  Id.  ¶6(I).

   Kotler was then escorted from his cell to a holding cell in the Special Housing Unit ("SHU").[2]  Compl. ¶¶ 6(I)-(J).  Later that day Kotler was transferred to Upstate Correctional Facility ("Upstate").  Id.  ¶ 6(K).  On May 17, 2007, Kotler received a misbehavior report which he contends is false, authored by Daby, alleging that Kotler "threatened and harassed Daby; and in doing so created a disturbance by cursing and shoving a locker at her."  Id.  ¶¶ 6(K)-(M).

   After receiving the misbehavior report, Kotler was assigned an assistant to help him present a defense during his disciplinary proceeding.  Compl. ¶ 6(N).  Kotler asked the assistant to interview the other twenty inmates who were housed with Kotler in the cell to see if any of them witnessed or heard the alleged disturbance Kotler created.  Id.  ¶¶ 6(P)-(Q).  No interviews were done.  Id.  ¶ 6(R).  Instead, defendants Woodruff, the presiding hearing officer, and Rocque, a Lieutenant, assumed the assistant's duties.  Id.

   On May 21, 2007, the disciplinary hearing was conducted by Woodruff.  Compl. ¶ 6(S).  The hearing was conducted unprofessionally, with Woodruff and Roque failing to encourage other inmates to testify or, at the very least, inform them that their testimony would be relevant.  Id.  ¶¶ 6(T)-(V).  Kotler was found guilty and sentenced to four months confinement in SHU, his security classification was elevated, he was subjected to additional restrictions, and he lost various privileges.  Id. ¶ 6(S).  Kotler appealed the disposition to

---

[2]SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

3

defendant Commissioner Fischer, who "forwarded[ Kotler's] appeals, letters, and . . . reports to others, namely [defendants] Venettozzi and Bezio." Compl. ¶ 6(W)-(X). Kotler contends that Fischer, Venettozzi, and Bezio all failed to "take reasonable steps to have [his grievance] investigated, and/or . . . correct . . . the aforementioned misconduct . . . ." Id. ¶ 6(Y). This action followed.

## II.  Discussion

Kotler contends that his First Amendment rights were violated when Daby retaliated against him and filed a false misbehavior report. Kotler also alleges that his Fourteenth Amendment rights were violated when he was subjected to a biased hearing officer and failed to receive effective help from his DOCS-appointed assistant during the course of his disciplinary hearing. Defendants contend that Kotler's constitutional claims are meritless and he failed to establish the personal involvement of Fischer, Bezio, and Venettozzi.

### A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007)

4

(holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

### C. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

### 1. Fischer

Kotler's principle complaint against Fischer is that he forwarded Kotler's complaints on to others and neglected appropriately to investigate Kotler's complaints. However, such contentions are insufficient to establish personal involvement. See Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citations omitted) (finding personal involvement only where a supervisory official received, reviewed, and responded to a prisoner's

6

complaint); Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability.") (citations omitted).

Similarly, receipt of a letter, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement.  See, e.g., Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (citing cases); Boddie v. Morgenthau, 342 F. Supp. 2d 193,  203 (S.D.N.Y. 2004).  Moreover, delegating the responsibility to other officers, as Kotler indicated Fischer did, is reasonable and also insufficient to establish personal involvement.  See Reid v. Artus, 984 F. Supp. 191, 195 (S.D.N.Y. 1997) (finding no basis for supervisory liability when defendant assigned another officer to investigate a complaint and then informed inmate that investigation had commenced).  Furthermore, the complaint fails to allege facts sufficient to establish that Fischer failed to train any of the defendants or that he was grossly negligent.

Accordingly, defendants' motion should be granted on this ground as to Fischer.

### 2. Venettozzi and Bezio

To the extent that Kotler claims Venettozzi and Bezio were personally involved because they failed to investigate Kotler's complaints, such contentions are meritless for the reasons discussed above.  However, Bezio authored a letter to Kotler stating that Bezio "d[id] not believe that there [was] sufficient grounds to reconsider the previous decision on that hearing," and deciding that "[n]o further administrative action w[ould] be taken."  Dkt. No. 7-

7

1 at 63.³  Additionally, Venettozzi was signed the document indicating that "on behalf of the Commissioner and in response to [Kotler's] recent letter of appeal," the Superintendent's Hearing results "ha[ve] been reviewed and affirmed . . . . "  Dkt. No. 7-1 at 46.

Construing the facts in the light most favorable to Kotler, Kotler has plausibly established Bezio's personal involvement.  The letter which Bezio authored indicates that he was aware of the grievance and complaints and personally reviewed the file, contemplated the decision, and reported the result.  See Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citations omitted) (finding personal involvement only where a supervisory official received, reviewed, and responded to a prisoner's complaint).  While Venettozzi's participation appears less, being that he only signed the document which communicated to Kotler that his appeal was denied, this still suffices to establish personal involvement.  See Rodriguez v. Selsky, No. 07-CV-432 (LEK/DEP), 2010 WL 980273, at *5-*7 (N.D.N.Y. Mar. 15, 2010) (discussing cases from other districts in this circuit holding that merely affirming a disciplinary disposition is insufficient to establish personal involvement. comparing them to other cases in the Northern and Southern Districts which came to the opposite result, and determining that the latter cases were "both better reasoned and more consistent with the Second Circuit's position regarding personal involvement.") (citations

---

³ Kotler attached multiple documents to his response in opposition to defendants' motion.  These documents include an appendix of exhibits (Dkt. No. 7-1) and a verified statement, which appears intended as an affidavit or statement of material facts (Dkt. No. 7 at 25-39).  Consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The documents which Kotler attached relate to the facts alleged in the complaint but are not incorporated into the complaint by reference.  However, given the special solicitude afforded pro se complaints, the documents were considered here to ensure a full consideration of Kotler's allegations.

omitted).

Accordingly, defendants' motion on this ground as to these two defendants should be denied.

### C. Retaliation

Kotler claims that he was subjected to retaliation when Daby authored a false misbehavior report against him. To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." Barclay v. New York, 477 F. Supp. 2d 546, 588 (N.D.N.Y. 2007) (citations omitted).

> There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the context of particular cases. However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration. Jackson v. Onondaga County, 549 F. Supp. 2d 204, 214-15 (N.D.N.Y. 2008). Therefore, conclusory allegations alone are insufficient.

9

Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

In this case, Kotler has alleged facts sufficient to support a plausible retaliation claim. First, Kotler's complaint indicates that the basis of his retaliatory false misbehavior report was his participation in filing grievances and lawsuits, both of which represent constitutionally protected conduct. Compl. ¶ 6(M). Second, Kotler was served with a disciplinary charge and sent to SHU, both of which constitute an adverse action. Id. ¶ 6 (J)-(L). Third, construing the facts in the light most favorable to Kotler, Daby's statements and the temporal proximity of the adverse actions present circumstantial evidence of a causal connection between the two.

Accepting the facts as Kotler has presented them, (1) Daby stated to Kotler that she was aware of his reputation as a snitch and active history of filing grievances and lawsuits against correctional staff; (2) Daby expressed her intentions to have him removed from the facility; (3) later that day Kotler was taken to SHU and then transferred from the facility; and (4) the transfer was due to a misbehavior report authored by Daby after she had confronted Kotler and expressed her disdain of his character and aim to have him removed from the facility. Compl. ¶ 6(G)-(M). Thus, Kotler's claims establish that Daby had direct knowledge of Kotler's constitutionally protected activities, disapproved of them, and, based on these facts, wanted him removed from her facility. Daby's specific statements about Kotler's litigation history are distinguishable from other complaints which were dismissed due to "conclusory and general allegations that [inmates] w[ere] retaliated against because of [their] reputation[s] for filing grievances in the past . . . . " Diaz v. Fischer, No. 08-CV-1208

(LEK/DRH), 2010 WL 1132772, at *8 (N.D.N.Y. Feb. 23, 2010) (citations omitted). "While [Daby's] comments do not explicitly state an intent to retaliate, they are consistent with and imply a retaliatory motive." Burton, 664 F. Supp. 2d at 368.

Moreover, Kotler's complaint indicates that he had most recently filed a New York State Court of Claims action on April 27, 2007 and a civil rights complaint on October 26, 2006, three weeks and seven months prior to the stated adverse action. Compl. ¶ 5(b)(B) & (E). There exists no bright-line rule for temporal proximity. However, pending actions filed three weeks and seven months before the alleged incidents here suffice to demonstrate a causal connection. See Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (holding that the passage of six months between the constitutionally protected conduct and adverse action was still "sufficient to support an inference of a causal connection."). This is further supported by Daby's statements that Kotler was a well-known litigant who had a history of suing correctional staff at the two prior facilities in which he was incarcerated. Her immediate recollection of Kotler's previously filed actions support an inference that Daby was aware of Kotler's history at the time of the adverse action. Thus, Kotler has sufficiently alleged facts to establish a causal connection based on Daby's statements and the time of his removal from Adirondack.

Accordingly, defendants' motion on this ground should be denied.

### D. Fourteenth Amendment

#### 1. Liberty Interest

As a threshold matter, an inmate asserting a violation of his or her right to due process

must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996). The fact that an inmate has been disciplined with a segregated confinement alone is insufficient to establish an atypical and significant deprivation.  The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in segregation as well as "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population" are to be considered.  Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259[4] (N.D.N.Y.1998).  The Second Circuit has noted that where the period of segregated confinement exceeds thirty days, "refined fact-finding" is required to resolve defendants' claims under Sandin.  Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000).

   As a result of his disciplinary hearing, Kotler was confined to SHU for four months. Compl. ¶ 6(S).  Therefore, he has alleged facts sufficient to exceed the thirty day threshold so that fact-finding is required to resolve his claims.  As Kotler has alleged facts sufficient to demonstrate a liberty interest, the procedure by which his liberty was curtailed must also be examined.  See generally Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir.1994) ("[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a

---

[4] Defendants do not address the preclusive effects of the "favorable termination" rule of Heck v. Humphrey, 512 U.S. 477, 487-87 (1994), on Kotler's claims regarding the false misbehavior report or procedural due process violations.  Accordingly, they will not be considered here.

liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)).

Accordingly, defendants' motion on this ground should be denied.

### 2. Fair and Impartial Hearing

While inmates are not given "the full panoply of [due process] rights," they are still afforded procedural process. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners are "entitled to advance written notice . . . ; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).

#### a. Hearing Officer

Prisoners have a constitutional right to a fair and impartial hearing officer. See, e.g., Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004). However, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges . . . [as i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996) (citations omitted). The Supreme Court has held "that the requirements of due process are satisfied if some evidence supports the decision by the [hearing officer] . . ." and

13

the Second Circuit has held that the test is whether there was "'reliable evidence' of the inmate's guilt." Luna v. Pico, 356 F.3d 481, 487-88 (2d Cir. 2004); see also Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Construing the facts in the light most favorable to Kotler, it appears that Woodruff supplanted the corrections officer initially assigned to help assist Kotler marshal a defense, asked inmates if they wished to testify without indicating the importance or potential relevance of their testimony, and then presided over the hearing and rendered the disposition sentencing Kotler to solitary confinement. Compl. ¶ 6(R)-(V). "[A]ctively discouraging [inmate witnesses] from testifying . . . ." at a hearing s suffices to establish a plausible claim that Woodruff was neither fair nor impartial as the hearing officer.[5] Id. ¶ 6(V). As this testimony would arguably have supported Kotler's defense at the hearing and facts have been alleged that Woodruff acted to bar that testimony, facts have been alleged which supoort Kotler's claim that Woodruff was neither fair nor impartial. See Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989) ("Since the touchstone of the right of due process is freedom from arbitrary governmental action, it is axiomatic that a prison disciplinary hearing in which the result is arbitrary and adversely predetermined violates this right.") (citations omitted).

Accordingly, defendants' motion on this ground should be denied.

---

[5] A letter included in the exhibits attached to Kotler's response supports his contentions that inmates were not properly interviewed or given the opportunity to report their observations that no altercation occurred between Daby and Kotler as reported in the misbehavior report. Dkt. No. 7-1 at 51-52.

### b. Assistance

Additionally, "[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." Eng v. Coughlin, 858 F.2d 889, 897 (2d Cir. 1988).  Such assistance is intended to aid inmates to "gather[] evidence, obtain[] documents and relevant tapes, and interview[] witnesses.  At a minimum, an assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself."  Id. at 898.  The Second Circuit has also held "that for inmates disabled by confinement in [separate housing] . . . , the right to substantive assistance is an obligation . . . [to] be provided in good faith and the best interests of the inmate."  Id.  However, this is a qualified right, and witness testimony "can be denied on the basis of irrelevance or lack of necessity."  Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991) (citations omitted).  Any violations of this right to assistance are reviewed to assess "whether the error was harmless or prejudicial."  Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991).

In this case, viewing the facts in the light most favorable to Kotler, he has alleged that he was denied appropriate assistance at his disciplinary hearing.  As previously discussed, Woodruff's and Rocque's failure to produce witnesses, or witness testimony, that indicated the Daby had fabricated the events reported in the misbehavior report represent relevant information which might reasonably led to a different result.  As such, a plausible claim exists that Kotler's due process rights were violated.  Accordingly, defendants' motion on this ground should be denied.

### 3. False Misbehavior Reports

An inmate enjoys the right not to be deprived of his liberty without due process. However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)).  "There must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Franco v. Kelly, 854 F.2d 584, 588-90 (2d Cir. 1988)).  Furthermore, a fair hearing would cure any due process violations resulting from false accusations.  Grillo v. Coughlin, 31 F.3d 53, 56 (2d Cir. 1994); Livingston v. Kelly, 561 F. Supp. 2d 329, 331 (W.D.N.Y. 2008) ("As the Second Circuit noted in its decision in this case, an inmate's allegation that he has been found guilty of false disciplinary charges may support a constitutional claim if he also alleges that he was denied the minimal procedural due process protections . . . .").  As discussed supra, Kotler has alleged facts sufficient to state a plausible retaliation claim.  Moreover, Kotler has also stated a plausible due process claim.  Thus, defendants' motion is denied on this ground.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 5) be:

1. **GRANTED** as to all claims against defendant Fischer; and
2. **DENIED** in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 10, 2011
       Albany, New York

_David R. Homer_
United States Magistrate Judge