**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

KERRY KOTLER,

                                     Plaintiff,

             v.                                              No. 10-CV-136
                                                                  (MAD/CFH)

WENDY DABY, Correction Officer, Adirondack
Correctional Facility; PAUL WOODRUFF,
Captain, Adirondack Correctional Facility;
ARTHUR ROCQUE, Lieutenant, Adirondack
Correctional Facility; D. VENETTOZZI,
Acting Director of Special Housing/Inmate
Disciplinary Program for DOCS; and NORM
BEZIO, Director of Special Housing/Inmate
Disciplinary Programs for DOCS,

                                     Defendants.[1]

_____

**APPEARANCES:**                              **OF COUNSEL:**

KERRY KOTLER
Plaintiff Pro Se
97-A-6645
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

HON. ERIC T. SCHNEIDERMAN          AARON M. BALDWIN, ESQ.
Attorney General for the                       Assistant Attorney General
   State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

_____

         [1]  The New York State Department of Correctional Services merged with the
Division of Parole and is now the New York State Department of Corrections and
Community Supervision.

**REPORT-RECOMMENDATION AND ORDER**[2]

Plaintiff pro se Kerry Kotler ("Kotler"), an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, five DOCCS employees, violated his constitutional rights under the First and Fourteenth Amendments. Compl. (Dkt. No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 52. Kotler opposes the motion. Dkt. No. 59. Defendants filed a reply to Kotler's response on October 18, 2012. Dkt. No. 60. For the following reasons, it is recommended that defendants' motion be granted and Kotler's complaint be dismissed.

## I. Background

The facts are related herein in the light most favorable to Kotler as the non-moving party. See subsection II(A) infra.

### A. Misbehavior Report

On May 11, 2007, Kotler was transferred to Adirondack Correctional Facility ("Adirondack") after previously being incarcerated at both Bare Hill Correctional Facility ("Bare Hill") and Franklin Correctional Facility ("Franklin"). Compl. ¶¶ 6(A), 6(G) n. 2. Upon admission, Kotler was housed in a dorm room referred to as "the barn." Kotler Dep. (Dkt. No. 52-21) at 16–17. At the barn, Kotler was assigned to a top bunk and given a locker for personal storage, which was placed at the foot of the bed. Id. at 17–21. The locker was

_____

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

approximately three feet by three feet, made of sheet metal with shelving inside, and stood thirty-five inches off the floor.  Id. at 25.  Kotler testified that when he transfers to a new correctional facility, he typically enlists another inmate to help him lift the locker in order to confirm that no contraband was left under the locker by another inmate.  Id.  Kotler kept personal property, including legal documents, in his locker.  Id. at 28.

Kotler testified that on May 15, 2007, he was standing at the foot of his bed, pulling out legal papers, when defendant Daby, a correction officer, asked him to place all of his personal belongings in his locker.  Compl. ¶¶ 6(C)–(D); Kotler Dep. at 38–39.  Kotler had approximately ten files under the bottom bunk bed that could not fit into the locker, of which he informed Daby.  Compl. ¶ 6(F); Kotler Dep. at 29–30.  Kotler approached Daby about the inability to fit all his files in the locker, standing ten feet away from Daby's desk, off to the side.  Kotler Dep. at 65.  Kotler alleged that Daby said she knew Kotler "had all the legal papers because he was a snitch and . . . that she knew all about him suing the guys over at Franklin and Bare Hill."  Compl. ¶ 6(G) (internal quotation marks omitted).  Daby also stated that "she did not want [a] snitch around [and] that she would have [Kotler] out of [Adirondack] by the end of the day," then told Kotler to move away from her desk.  Id. ¶¶ 6(H)–(I) (internal quotation marks omitted).

Daby disputes the facts surrounding the alleged misconduct.  Daby claimed that the first time she had any knowledge of Kotler was on May 14, 2007, when she saw him sitting in a chair in the middle of a doorway to the barn.  Daby Decl. (Dkt. No. 52-3) ¶¶ 8–9.  Daby instructed Kotler to move out of the doorway due to safety concerns.  Id. ¶ 11.  On the morning of May 15, 2007, Daby was inspecting the barn for cleanliness when she noticed that Kotler was sitting on his bed, writing on something.  Id. ¶¶ 14–15.  Daby noted that the

bed was unmade and a pair of sneakers and other folders and papers were on the ground. Id. ¶¶ 15–16. Daby instructed Kotler to clean the area, to which Kotler responded, "it's good enough, this is my dorm, get the fuck out before I throw you out." Id. ¶ 17. Daby claimed that Kotler jumped down from his bunk, shoved his locker at her, and said, "get the point bitch." Id. ¶ 18. Kotler denies Daby's version of the incident. Kotler Dep. at 91. In fact, Kotler claims that it is physically impossible for him to push the locker towards Daby. Pl.'s Mem. of Law in Opp. (Dkt. No. 59-2) at 6. Shortly after Kotler returned to his cell, he was escorted to a holding cell in the Special Housing Unit ("SHU")[3] and later that day, transferred to Upstate Correctional Facility ("Upstate"). Compl. ¶¶ 6(I)–(K).

On May 17, 2007, Kotler received a misbehavior report authored by Daby, which he contends to be false. Id. ¶ 6(L)–(M). The report alleged that Kotler "threatened and harassed Daby; and in doing so created a disturbance by cursing and shoving a locker at her." Id. ¶ 6(L). Specifically, the report charged Kotler with violating Rules 104.13 (creating a disturbance), 102.10 (threats), and 107.11 (harassment). Inmate Misbehavior Report (Ex. F attached to Defs.' Mot. for Summ. J.) (Dkt. No. 52-15) at 7.

Kotler contends that Daby knew of his two prior lawsuits against prisoner officials at Bare Hill and Franklin. Specifically, Kotler contends that Daby could have learned about his prior lawsuits by seeing related legal files in his possession or through institutional records. Pl.'s Mem. of Law in Opp. at 6.

Daby also denies having knowledge of Kotler's prior lawsuits against prison officials.

---

[3] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

Daby emphasized that she has only worked at Adirondack, never worked at Bare Hill or Franklin, never had any discussions with other DOCCS employees concerning Kotler or his complaints, does not personally know any employees at Bare Hill or Franklin, and never reviewed documents concerning Kotler or his lawsuits.  Daby Decl. ¶¶ 2, 25–28, 33–34.  Similarly, correction officers Dann, Daily, and Charland, who were defendants in Kotler's prior lawsuit, stated that they have never spoken with Daby.[4]  Compl. to <u>Kotler v. Donelli</u> (Ex. B attached to Defs.' Mot. for Summ. J.) (Dkt. No. 52-11); Dann Decl. (Dkt. No. 52-6) ¶¶ 1–6; Daily Decl. (Dkt. No. 52-5) ¶¶ 1–8; Charland Decl. (Dkt. No. 52-4) ¶¶ 1–8.

## B.  Investigation

Kotler selected an assistant at Upstate, non-party Officer Hebert, to help investigate and defend against the misbehavior report.  Compl. ¶ 6(N); Kotler Dep. at 93; Employee Assistant Selection Form (Dkt. No. 52-15) at 6.  Kotler asked Hebert to obtain certain interviews, documents, and identifications.  Kotler Mem. dated 5/17/07 (Dkt. No. 52-15) at 20–22.  Kotler admitted to receiving everything requested in the memorandum except he does not believe that Hebert interviewed any inmates who witnessed the incident on May 15, 2007.  Compl. ¶¶ 6(P)–(R); Kotler Dep. at 94–98.

Rocque and non-party Officer McDougall were asked to assist Hebert with investigative tasks.  Tier 3 Hr'g Tr. (Ex. H attached to Defs.' Mot. for Summ. J.) (Dkt. No. 52-17) at 13–17, 37; Woodruff Decl. ¶ 13; Rocque Decl. ¶ 4.  Thus, on May 18, 2007, Rocque and

---

[4]  The other law suit at issue is <u>Kotler v. State of New York</u>.  Compl. to <u>Kotler v. State of New York</u> (Ex. C attached to Defs.' Mot. for Summ. J.) (Dkt. No. 52-12).

McDougall arrived at the barn during "count time"[5] and asked approximately twenty inmates whether they saw, heard, or remembered anything about Kotler and Daby during the morning of May 15, 2007. Rocque Decl. ¶¶ 6–8. McDougall asked to talk to any such inmates and further stated that inmates could privately speak with Rocque at the Tier Hearing Office. Id. ¶¶ 8–9. No inmate had any questions, identified himself as having witnessed anything surrounding the incident, or reported to the Tier Office. Id. ¶¶ 12–13.

During the exchange between Kotler and Daby, there were several inmates present in the barn. Kotler saw an inmate by the name "K.P.," who was later identified as Inmate Green. Kotler Dep. at 42, 45. At a later time, after the disciplinary hearing was conducted, Kotler discovered that Inmate Johnson witnessed parts of the incident. Id. at 42; Johnson Letter dated 10/1/2007 (Dkt. No. 52-19) at 12–13. Johnson was returning to the barn when he heard Kotler and Daby talking at Daby's desk. Johnson Letter at 12–13. Johnson noted that Kotler was neither loud nor disrespectful. Id. More importantly, Johnson claimed that had he known what Kotler was accused of, he would have testified that Kotler was innocent of those charges. Id.

Per Kotler's request, Rocque interviewed Green on May 18, 2007 at the Tier Hearing Office at Adirondack. Rocque Decl. ¶ 15. Green stated that "[he couldn't] help Kotler with this matter" and signed a refusal form. Id. ¶¶ 17, 19; Green Refusal to Testify (Dkt. No. 52-15) at 28. Rocque stated that he asked Green to provide a specific reason for his refusal but Green declined. Rocque Decl. ¶ 20. Also per Kotler's request, Rocque interviewed Johnson. Id. ¶ 23. Johnson refused to testify and signed a refusal form indicating that he

---

[5] "Count time" is when all inmates who were housed at a particular unit would be present. Rocque Decl. ¶ 6.

"did not see anything."  Id. ¶ 25; Johnson Refusal to Testify (Dkt. No. 52-15) at 27.

Nevertheless, as indicated supra, Johnson later elaborated that Kotler did not perform the

alleged misconduct.


### C.  Disciplinary Hearing

On May 21, 2007, Woodruff conducted a disciplinary hearing on the misbehavior report

dated May 17, 2007.  Compl. ¶ 6(T).  Kotler requested that Officers Daby, Wright, King, and

Sergeant Whitney testify at the Tier Hearing.  Tier 3 Hr'g Tr. at 8–9, 35, 42.  Woodruff

spoke with Johnson and Green privately to verify their refusals to testify.  Woodruff Decl.

¶ 19.  When Kotler learned that Woodruff had spoke with Johnson and Green, Kotler

objected to Woodruff's involvement as both an assistant and a hearing officer.  Tier 3 Hr'g

Tr. at 12–13.  Kotler was dissatisfied with the refusal forms signed by Johnson and Green

and requested that the two inmates state their refusals on the record, which Woodruff

denied.  Id. at 17.  Further, Kotler contends that Woodruff and Rocque failed to encourage

other inmates to testify.  Compl. ¶ 6(T).

Concerned with the potential of a biased investigation, Kotler contends that his right to

select an assistant for the investigation was violated when Rocque and McDougall were

summoned to take over Hebert's duties, officers whom Kotler did not select.  Tier 3 Hr'g Tr.

at 14, 37.  Woodruff responded that the assistance was conducted through the Tier Office

at Adirondack.  Id. at 17.  Because the incidents underlying the misbehavior report occurred

at Adirondack and the hearing was conducted at Upstate, where Kotler was housed

pending a disposition on the report, officers at Adirondack were appointed to carry out the

investigation.  Id. at 16–17.

Woodruff found Kotler guilty of all charges except for harassment, penalized him to four months of confinement in SHU, loss of commissary, recreation, phone privileges, and good time credits, and assigned him an elevated security classification. Compl. ¶ 6(S); Tier 3 Hr'g Tr. at 58; Disposition Sheet at 2–4. Woodruff reasoned that Kotler's behavior could not be tolerated in a prison. Woodruff Decl. ¶ 26; Disposition Sheet (Ex. F attached to Defs' Mot. for Summ. J.) (Dkt. No. 52-15) at 2–4.

Kotler appealed the Tier III hearing disposition to defendant Venettozzi, acting director of special housing/inmate disciplinary program. See Appeal Packet (Dkt. No. 52-18). The disposition was affirmed. Id. at 1. Kotler then submitted a letter dated November 15, 2007, requesting a reconsideration of his appeal, which was denied by a letter dated April 2, 2008 from defendant Bezio, director of special housing/inmate disciplinary program. See Appeal Reconsideration Packet (Dkt. No. 52-19). The outcome of the Tier 3 hearing has neither been reversed or expunged. Disciplinary History (Dkt. No. 52-20) at 1. Kotler ultimately served three months and twenty-four days in SHU. Kotler Dep. at 62. Kotler contends that because of his SHU confinement, he was not able to communicate with his mother and daughter as frequently as he could while incarcerated with the general prison population. Kotler Dep. at 108, 115–18. Kotler alleged that Venettozzi and Bezio "failed to adequately investigate [the misbehavior report] and did not take reasonable steps to have it investigated." Compl. ¶ 6(Y).

## D. Procedural History

Kotler commenced this action on February 5, 2010. See Compl. Kotler requests the Court to: (1) declare that the defendants' acts violated his constitutional rights; (2) enter

judgment in his favor for compensatory and punitive damages against all defendants; (3)

enter judgment in his favor for injunctive relief, in the form of a reversal and expungement of

his Tier 3 hearing disposition, with the exception of loss of good time credits; (4) and any

costs and attorney fees.[6]  Compl. (Dkt. No. 52-10) at 17.[7]  Defendants filed a motion to

dismiss on April 30, 2010.  Dkt. No. 5.  By Decision and Order, the Court dismissed all of

Kotler's claims against defendant Brian Fischer, commissioner of DOCCS.  Dkt. No. 15 at

6–7, 16.  This motion followed.


## II.  Discussion

Kotler contends that his First Amendment rights were violated when Daby retaliated

against him by filing a false misbehavior report.  Kotler also contends that his Fourteenth

Amendment rights were violated when defendants Woodruff, Rocque, Venettozzi, and

Bezio denied him due process during the course of his disciplinary hearing.  Defendants

contend that Kotler's constitutional claims are without merit, and alternatively, that they are

entitled to Eleventh Amendment immunity and qualified immunity.


### A.  Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any

---

[6]  Kotler also seeks consequential damages, (Compl. ¶ 9), which generally flows from the breach of a contract.  28 GLEN BANKS, N.Y. PRAC., CONTRACT LAW § 22:18 (2012). Because no where in the record indicates a breach of contract claim, Kotler is barred from seeking such damages.

[7]  Kotler filed a complaint with the Court that left out a page containing the relief sought.  Defendants submitted Kotler's entire complaint, including the missing page, as an attachment to their motion for summary judgment.  Dkt. No. 52-10.

material fact if supported by affidavits or other suitable evidence and the moving party is

entitled to judgment as a matter of law.  The moving party has the burden to show the

absence of disputed material facts by informing the court of portions of pleadings,

depositions, and affidavits which support the motion.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v.</u>

<u>Catrett</u>, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the

case as determined by substantive law.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248

(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the

non-moving party.  <u>Skubel v. Fuoroli</u>, 113 F.3d 330, 334 (2d Cir. 1997).

   The party opposing the motion must set forth facts showing that there is a genuine issue

for trial. The non-moving party must do more than merely show that there is some doubt or

speculation as to the true nature of the facts.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>

<u>Corp.</u>, 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could

find in favor of the non-moving party for a court to grant a motion for summary judgment.

<u>Gallo v. Prudential Residential Servs.</u> 22 F.3d 1219, 1223–24 (2d Cir. 1994); <u>Graham v.</u>

<u>Lewinski</u>, 848 F.2d 342, 344 (2d Cir. 1988).

   When, as here, a party seeks judgment against a pro se litigant, a court must afford the

non-movant special solicitude.  <u>See</u> <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471,

477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a <u>pro</u> <u>se</u>
> litigant is entitled to "special solicitude," . . . that a <u>pro</u> <u>se</u> litigant's
> submissions must be construed "liberally,". . . and that such
> submissions must be read to raise the strongest arguments that
> they "suggest," . . . .  At the same time, our cases have also
> indicated that we cannot read into <u>pro</u> <u>se</u> submissions claims
> that are not "consistent" with the <u>pro</u> <u>se</u> litigant's allegations, . . .
> or arguments that the submissions themselves do not "suggest,"
> . . . that we should not "excuse frivolous or vexatious filings by

pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247–48.

## B.  Retaliation

Kotler contends that Daby authored a false misbehavior report against him as retaliation for filing prior lawsuits against correction officers at other facilities.  Specifically, Kotler alleged that Daby was informed of Kotler v. Donelli, 06-CV-1308 and Kotler v. State of New York, # 113630.  See Dkt. Nos. 52-11, 52-12.  To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that:  (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action.  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010).  In the prison context, "adverse action" is objectively defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights."  Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003).  "[A]dverse

action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone." Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008).

"Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." Barclay v. New York, 477 F. Supp. 2d 546, 588 (N.D.N.Y. 2007) (citations omitted).

> There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the context of particular cases. However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration. Jackson, 549 F. Supp. 2d at 214–15. Therefore, conclusory allegations alone are insufficient. Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")). If the plaintiff establishes these elements, the burden shifts to the defendants to show by a preponderance of the evidence that they would have taken the same action against the plaintiff absent his exercising of the protected conduct. Graham v. Henderson, 89 F.3d 75,

12

79 (2d Cir. 1996).

Kotler has successfully met the first and second prongs.  First, because Kotler alleged that Daby retaliated against him for filing prior lawsuits, and the filing of lawsuits is a constitutionally protected activity, Kotler has satisfied the first prong.  <u>Graham</u>, 89 F.3d at 80.  Second, Kotler has met the second prong since confinement for a period of weeks in SHU constitutes an adverse action.  <u>See</u> <u>Gill</u>, 389 F.3d at 383.

However, defendants' contention that Kotler has failed to establish the third prong is substantiated by the record.  Kotler alleged that Daby emphatically stated that she knew he was a snitch who had multiple pending lawsuits.  By the time this instant motion was filed, Kotler began to claim that Daby could have been made aware of his other lawsuits through institutional records or the legal papers that she saw.  Such a conclusory and speculative allegation is in contrast to Daby's affidavit, which claims that she had no knowledge of Kotler's lawsuits and did not know or ever speak with the named defendants in those lawsuits.  Daby's statements are corroborated by those same named defendants who were corrections officers at other facilities, namely Charland, Daly, and Dunn, who confirmed that they never knew Daby and never spoke or worked with her.  Therefore, beyond Kotler's conclusory allegations, there is nothing in the record refuting Daby's corroborated testimony that these individuals did not work together, know each other, or converse with one another.

While there is appropriate temporal proximity between the alleged protected conduct and adverse action, "[i]n many circumstances . . . th[at] alone is insufficient to avoid summary judgment."  <u>Webster v. Fischer</u>, 694 F. Supp. 2d 163, 183 (N.D.N.Y. 2010).  Failure to prove that Daby had knowledge of the prior protected conduct or prior named defendants, even in light of temporal proximity, is fatal to Kotler's claim.  <u>Shaheen v. Filion</u>,

No. 04-CV-625 (FJS/DRH), 2006 WL 2792739, at *3 (N.D.N.Y. Sept. 17, 2006) (Dkt. No. 52-23 at 164) (dismissing retaliation claim where inmate "provide[d] no evidence to demonstrate that any defendant had any knowledge of his complaints . . . prior to the filing of the misbehavior report," and to which defendants "provided a declaration stating that he or she was unaware of any of [the inmate's] writings that criticized prison officials and conditions."); Chapple v. Keane, 903 F. Supp. 583, 585 (S.D.N.Y. 1995) (dismissing retaliation claims where the inmate had previously filed a complaint against individuals other than the named defendants and the officer who wrote the misbehavior report which was the basis of the lawsuit declared under oath that he had no knowledge of prior complaints filed by the inmate).  Moreover, this district has previously held that inmate actions alleging retaliation "against other prison employees elsewhere in the New York penal system," without providing additional factual allegations establishing knowledge and involvement, are insufficient to state a claim.  Gonzales v. Wright, No. 06-CV-1424 (JMH), 2010 WL 681323, at *12 (N.D.N.Y. Feb. 23, 2010) (Dkt. No. 52-23 at 27); see also Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about a prior incident by another corrections officer); Roseboro v. Gillespie, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (finding that the inmate "has failed to provide any basis to believe that [a corrections counselor] retaliated for a grievance that she was not personally named in.") (collecting cases).

Accordingly, defendants' motion on this ground should be granted.


### C.  Due Process

Kotler contends that defendants Woodruff, Rocque, Venettozzi, and Bezio denied him

due process during his disciplinary hearing.  Construing the facts in the light most favorable

to the plaintiff, Kotler specifically contends that:  (1) defendants Woodruff and Rocque failed

to investigate his misbehavior report in good faith, thus, failing to afford him a reasonable

opportunity to call witnesses and present his defense; (2) defendant Woodruff failed to act

as a fair and impartial hearing officer, aiding defendants Rocque and Daby throughout the

disciplinary hearing; and (3) defendants Venettozzi and Bezio failed to investigate his

appeal upon receiving new evidence.  However, "the Constitution d[oes] not require that

restrictive confinement within a prison be preceded by procedural due process protections

unless the confinement subjected the prisoner to atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life."  Colon v. Howard, 215 F.3d 227,

230 (2d Cir. 2000) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)) (internal quotation

marks omitted).


### 1.  Atypical and Significant Hardship

As a threshold matter, an inmate asserting a violation of his or her right to due process

must establish the existence of a protected interest in life, liberty, or property.  See Perry v.

McDonald, 280 F.3d 159, 173 (2d Cir. 2001).  To establish a protected liberty interest, a

prisoner must satisfy the standard set forth in Sandin.  This standard requires a prisoner to

establish that the deprivation was atypical and significant in relation to ordinary prison life.

Sandin, 515 U.S. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999); Frazier v.

Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).  The fact that an inmate has been disciplined

with segregated confinement alone is insufficient to establish an atypical and significant

deprivation.  The Second Circuit has articulated a two-part test whereby the length of time a

15

prisoner was placed in segregation as well as "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population" are to be considered.  Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998).

While not a dispositive factor, the duration of a disciplinary confinement is a significant factor in determining atypicality.  Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000) (citations omitted).  The Second Circuit has not established "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights."  Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (citations omitted).  Instead, the Second Circuit has provided guidelines that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of confinement relative to ordinary prison conditions is required."  Id. at 64–65 (citing Colon, 215 F.3d at 232).  In the absence of a dispute about the conditions of confinement, summary judgment may be issued "as a matter of law."  Id. at 65 (citations omitted).  Conversely, where an inmate is confined under normal SHU conditions for a duration in excess of an intermediate disposition, the length of the confinement itself is sufficient to establish atypicality.  Id. (citing Colon, 215 F.3d at 231-32).  Additionally, "[i]n the absence of a detailed factual record, [the Second Circuit] has affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short—less than . . . [thirty] days—and there was no indication that the plaintiff endured unusual SHU conditions."  Id. (citations omitted); see also Smart v. Goord, 441 F. Supp. 2d 631, 640 (holding that Second Circuit decisions "are unanimous that keeplock of [thirty] days or less in New York prisons is not atypical or significant . . . under Sandin.") (internal quotations marks and citations omitted).

16

Although not expressly argued, defendants intimated to the Court their position that Kotler did not suffer atypical and significant hardship for purposes of his Due Process claims. Defs.' Mem. of Law at 15, n. 4. Kotler has failed to demonstrate that his deprivation was atypical and significant, as required by Sandin. Kotler was confined in SHU for three months and twenty-four days, approximately 114 days, which is within an intermediate disposition. Kotler was also penalized by loss of commissary, recreation, phone privileges, and good time credits. There is no indication that the time which Kotler spent in SHU was in any way unusual or atypical. Given the status of the detailed factual record, and the complete absence of any allegations by Kotler that his disciplinary confinement was anything other than ordinary, Kotler's due process claims should be dismissed based on his failure to establish a protected liberty interest.

## 2. Procedural Due Process

Assuming that Kotler established a liberty interest, he has established that he was denied certain appropriate procedural protections. While inmates are not given "the full panoply of [due process] rights," they are still afforded procedural process. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). A prisoner is "entitled to advance written notice . . . ; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).

### a. Opportunity to Call Witnesses

"Prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." Eng v. Coughlin, 858 F.2d 889, 897 (2d Cir. 1988).  Such assistance is intended to aid inmates to "gather[] evidence, obtain[] documents and relevant tapes, and interview[] witnesses.  At a minimum, an assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself."  Id. at 898.  The Second Circuit has also held "that for inmates disabled by confinement in [separate housing] . . . , the right to substantive assistance is an obligation . . . [to] be provided in good faith and the best interests of the inmate."  Id.  However, this is a qualified right, and "[i]t is well settled that an official may refuse to call witnesses as long as the refusal is justifiable [such as] . . . on the basis of irrelevance or lack of necessity."  Scott v. Kelly, 962 F.2d 145, 146–47 (2d Cir. 1992) (internal quotations and citations omitted); see also Richardson v. Van Dusen, 833 F. Supp. 146, 152 (N.D.N.Y. 1993).  Any violations of this right to assistance are reviewed to assess "whether the error was harmless or prejudicial."  Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991).

Here, Kotler contends that Rocque improperly assumed Hebert's responsibilities as an assistant.  The "constitutional mandate . . . does not obligate prison officials to provide an assistant of the prisoner's choosing . . . ."  LeBron v. Artus, No. 05-CV-534 (LEK/DEP), 2007 WL 2765046 at *8 (N.D.N.Y. Sept. 20, 2007) (Attachment A)[8]; see also Greene v. Coughlin, No. 93-CV-2805 (DLC), 1995 WL 60020, at *14 (S.D.N.Y. Feb. 10, 1995)

---

[8] All unpublished cases not included in defendants' appendix of cases shall be attached to the Report-Recommendation.

(explaining that indigent, criminal defendants are not entitled to an unencumbered right to counsel of their choosing, accordingly an inmate at a disciplinary hearing is not entitled to more rights than a criminal defendant and thus is not entitled to a broad right to choose counsel) (Attachment B). Instead, the inmate assistant is to provide assistance in marshaling a defense, in good faith and in the best interests of the inmate. In this case, Kotler chose an assistant, Hebert, who was located at the facility that Kotler was incarcerated at while the disciplinary hearing was pending and provided Kotler with the documents and information that Kotler requested. However, utilizing this assistant for interviewing witnesses and marshaling statements at Kotler's prior correctional facility was untenable as geography precluded Hebert from being able to fully comply with Kotler's requests. Despite defendants' use of a substitute assistant, Kotler's requests were investigated, the inmates were questioned, and the refusal to testify forms were signed. Thus, Kotler actually received the assistance he requested and required. Without further requests for assistance, no issue of material fact remains with regard to the appropriateness of the assistance.

As for Kotler's assertion that Woodruff had assumed the responsibilities of an assistant, that assertion must fail because Woodruff's involvement did not concern an investigation into the merits of the charges against Kotler. See Jackson v. Onondaga County, 549 F. Supp. 2d 204, 220 (N.D.N.Y. 2008) (explaining that an impartial hearing officer shall not investigate the merits of a disciplinary charge).

Accordingly, defendants' motion on this ground should be granted.

### b. Fair and Impartial Hearing Officer

Construing the facts in the light mots favorable to the plaintiff, Kotler contends that

Woodruff failed to serve as an impartial hearing officer because he acted with bias against

Kotler throughout the disciplinary hearing and disposition.  Prisoners have a constitutional

right to a fair and impartial hearing officer.  See, e.g., Sira v. Morton, 380 F.3d 57, 69 (2d

Cir. 2004).  However, "[t]he degree of impartiality required of prison officials does not rise to

the level of that required of judges . . . [as i]t is well recognized that prison disciplinary

hearing officers are not held to the same standard of neutrality as adjudicators in other

contexts."  Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996) (citations omitted).  The

Supreme Court has held "that the requirements of due process are satisfied if some

evidence supports the decision by the [hearing officer]" and the Second Circuit has held

that the test is whether there was "'reliable evidence' of the inmate's guilt."  Superintendent,

Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985) (emphasis added); Luna v. Pico, 356

F.3d 481, 487–88 (2d Cir. 2004).

Here, Kotler's disciplinary disposition was not based on reliable evidence of his guilt.

Woodruff's disposition sheet stated that he found the testimonies of Daby, Whitney,

Rocque, and King to be credible.  Disposition Sheet at 3.  However, only Daby's testimony

concerned the facts underlying the misbehavior report and she testified in support of the

same facts as alleged in the misbehavior report she authored.  Daby's testimony is

contradicted by Kotler's testimony, which made clear that, despite the provision of

Johnson's refusal form, the text within which it contained was ambiguous as to whether

Johnson truly saw that nothing happened, which would refute Daby's testimony, or if

Johnson was supporting Daby's version of the incident.  Given the subsequent letter

submitted by Johnson, it seems that the former was Johnson's intention and that Kotler proffered that exact argument.

Further, Kotler used King's testimony to support his argument that Daby's story was implausible. King, when asked whether there was an extensive amount of legal documents inside Kotler's locker, replied, "[Kotler] probably has more legal work than I've ever seen an inmate have." Tier 3 Hr'g Tr. at 40–41. This supports Kotler's assertion that the locker was too heavy for him to shove, as Daby alleged. In addition, this testimony was consistently repeated in Kotler's deposition testimony.

Moreover, the failure to consider Kotler's argument about the refusal form also indicates an issue of the evidence that Woodruff relied upon. Hearing officers act within their authority when they refuse to call an inmate witness that do not have relevant information or are unwilling to testify. See Shell v. Brzezniak, 365 F. Supp. 2d 362, 377 (W.D.N.Y. 2005) (citing inter alia Silva v. Casey, 992 F.2d 20, 22 (2d 1993) ("if a prison official, presiding over a prison disciplinary hearing, reasonably concludes that it would be futile to call a witness to testify, his refusal will not constitute a violation of the prisoner's constitutional rights.")). The question then becomes whether the inmate witness's refusal to testify based on the written statement that he did not see anything made him a futile witness, or whether that language actually indicated a willingness to not only testify but provide some evidence of guilt or innocence, thus raising a question of material fact. See Creech v. Schoellkoph, 688 F. Supp. 2d 205, 213 (W.D.N.Y. 2010) (granting summary judgment where inmate witnesses refused to testify, one of which signed a refusal form, and the plaintiff failed to present evidentiary proof indicating that there was a question surrounding these refusals or the futility of calling the inmate witnesses). Construing the facts in the light most favorable to

Kotler, along with the additional support of the subsequent inmate witness letter, such a question of fact remains. Accordingly, if Kotler has established a protected liberty interest, defendants' motion on this ground should be denied.

### c. Denied Appeals

Defendants contend that Kotler has failed to establish the personal involvement of Venettozzi and Bezio for purposes of this § 1983 action. "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319,

323–24 (2d Cir. 1986)).[9]

Here, the only involvement on the part of both Venettozzi and Bezio was affirming the results of Kotler's disciplinary hearing. The affirming of a disciplinary hearing does not constitute personal involvement. Tafari v. McCarthy, 714 F. Supp. 2d 317, 377 (N.D.N.Y. 2010) (citation omitted). Accordingly, defendants' motion on this ground should be granted.

### D. False Misbehavior Report

An inmate enjoys the right not to be deprived of his liberty without due process. However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Franco v. Kelly, 854 F.2d 584, 588–90 (2d Cir. 1988)). Furthermore, a fair hearing would cure any due process violations resulting from false accusations. Grillo v. Coughlin, 31 F.3d 53, 56 (2d Cir. 1994); Livingston v. Kelly, 561 F. Supp. 2d 329, 331 (W.D.N.Y. 2008) ("As the Second Circuit noted in its decision in this case, an inmate's allegation that he has been found guilty of false disciplinary charges

---

[9] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. See McCarroll v. Fed. Bureau of Prisons, No. 08-CV-1343 (DNH/GHL), 2010 WL 4609379, at *4 (N.D.N.Y. Sept. 30, 2010) (noting that although the Second Circuit has not yet addressed Iqbal's impact on the five Colon factors, several district courts have done so); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

may support a constitutional claim if he also alleges that he was denied the minimal procedural due process protections . . . .").  As discussed supra, because both Kotler's retaliation and Due Process claims are without merit, Kotler's claim resting solely on a false misbehavior report cannot stand.  Accordingly, it is recommended that this claim be dismissed.

### E.  Other Defenses

### 1.  Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)).  Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.  Halderman, 465 U.S. at 100.  Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states.  See Quern v. Jordan, 440 U.S. 332, 340–41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official.  Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)).  "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff

seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Here, Kotler seeks monetary damages against defendants for acts occurring within the scope of their duties with DOCCS.  Thus, the Eleventh Amendment bar applies and serves to prohibit Kotler's claims for monetary damages against defendants in their official capacities.  Accordingly, defendants' motion on this ground should be granted.

Defendants contend that Kotler's request for injunctive relief is barred by the Eleventh Amendment.  "It is well settled that injunctive relief is not appropriate for past injuries, even when the Eleventh Amendment limits injunctive relief to be the only available remedy."  Pilgrim v. New York State Dep't. of Corr. Servs., 2011 WL 6031929, *4 n.5 (N.D.N.Y. Sept. 1, 2011) (internal quotation marks and citation omitted) (Dkt. No. 52-23) at 151–55.  Therefore, Kotler's request for the expungement of the misbehavior report is barred.  Accordingly, defendants' motion on this ground should be granted.

## 2.  Qualified Immunity

Defendants claim that even if Kotler's constitutional claims are substantiated, they are nevertheless entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229–30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 F. App'x 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable

public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need only be addressed with regard to Kotler's First Amendment retaliation claim. The second prong need not be addressed with respect to all of Kotler's claims because, as discussed supra, it has not been shown that defendants violated Kotler's First or Fourteenth Amendment rights. Accordingly, defendants' motion on this ground should be granted.

### 3. Heck v. Humphrey

The "favorable termination" rule of Heck v. Humphrey provides that if a determination favorable to the plaintiff in a § 1983 action "would necessarily imply the invalidity of his conviction or sentence," a plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid in order to recover damages under § 1983. 512 U.S. at 487. This rule apples to challenges to procedures used in prison disciplinary proceedings. Edwards. v. Balisok, 520 U.S. 641 (1997). However, in Peralta v. Vasquez, the Second Circuit stated that "the favorable termination requirement is not intended to compel a prisoner to demonstrate that a sanction he seeks to challenge, or the procedure

that led to it, has been invalidated before he can proceed under § 1983 when that sanction does not affect the term of his confinement."  467 F.3d 98, 104 (2d Cir. 2006).

   In this case, Kotler received both a loss of good time and a loss of commissary, package, and telephone privileges.  Thus, he received a "mixed sanctions" disposition.  The Second Circuit has held that "a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, <u>but that he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement</u>."  <u>Peralta</u>, 467 F.3d at 104.  Kotler has indicated in his complaint that he is willing to segregate his claims and "abandon[] any legal claims he has or may have with respect to the loss of good time stemming from the deposition rendered at the . . . disciplinary hearing . . . ."  Compl. ¶ 6(z).  Therefore, Kotler is permitted to proceed separately with his challenge to the elements regarding his conditions of confinement which arose from his disciplinary disposition.  <u>Id.</u>  If Kotler has established a protected liberty interest for purposes of a due process claim, such a claim may proceed with respect to his challenges regarding the proceedings which resulted in his loss of commissary, packages, and the telephone.

   Accordingly, defendant's motion on this ground should be denied.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' summary judgment (Dkt. No. 52) be **GRANTED** as to all Kotler's remaining claims and Kotler's complaint be **DISMISSED** with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: December 3, 2012
       Albany, New York

<br>

Christian F. Hummel
U.S. Magistrate Judge