**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KERRY KOTLER,**

                                        **Plaintiff,**

        **vs.**                                                        **9:10-CV-136**
                                                                       **(MAD/CFH)**

**WENDY DABY, Correction Officer, Adirondack**
**Correctional Facility; PAUL WOODRUFF, Captain,**
**Adirondack Correctional Facility; ARTHUR ROCQUE,**
**Lieutenant Adirondack Correctional Facility;**
**D. VENETTOZZI, Acting Director of Special Housing/**
**Inmate Disciplinary Program for DOCS; NORM BEZIO,**
**Director of Special Housing/Inmate Disciplinary Programs**
**for DOCS,**

                                        **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**NELSON BROWN**
97-A-6645
Fishkill Correctional  Facility
P.O. Box 1245
Beacon, New York 12508
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**                    **AARON M. BALDWIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiff _pro se_ Kerry Kotler, an inmate currently in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS"), commenced this action

pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his rights under the First and

Fourteenth Amendments to the United States Constitution. *See* Dkt. No. 1. On August 2, 2012, Defendants filed a motion for summary judgment. *See* Dkt. No. 52.

In a Report-Recommendation and Order dated December 3, 2012, Magistrate Judge Hummel recommended that the Court grant Defendants' motion and dismiss the complaint. *See* Dkt. No. 61. Currently before the Court are Plaintiff's and Defendants' objections to Magistrate Judge Hummel's Report-Recommendation and Order. *See* Dkt. Nos. 67, 68.

## II. BACKGROUND[1]

### A.      Misbehavior report

On May 11, 2007, Plaintiff was transferred to Adirondack Correctional Facility ("Adirondack C.F.") after being previously incarcerated at both Bare Hill Correctional Facility ("Bare Hill C.F.") and Franklin Correctional Facility ("Franklin C.F."). *See* Dkt. No. 1 at ¶¶ 6(A), 6(G). Upon admission, Plaintiff was housed in a dorm room referred to as "the Barn." *See* Dkt. No. 52-21 at 16-17. At the Barn, Plaintiff was assigned to a top bunk and given a locker for personal storage, which was placed at the foot of the bed. *See id.* at 17-21. The locker was approximately three feet by three feet, made of sheet metal with shelving inside, and stood thirty-five inches off the floor. *See id.* at 25. Plaintiff testified that when he transfers to a new correctional facility, he typically enlists another inmate to help him lift the locker in order to confirm that no contraband was left under the locker by another inmate. *See id.* Plaintiff kept personal property, including legal documents, in his locker. *See id.* at 28.

Plaintiff testified that on May 15, 2007, he was standing at the foot of his bed, pulling out

---

[1] The Court has adopted Magistrate Judge Hummel's recitation of the relevant factual background, to the extent that it is supported by the record and not objected to by the parties.

legal papers, when Defendant Daby, a corrections officer, asked him to place all of his personal belongings in his locker. *See* Dkt. No. 1 at ¶¶ 6(C)-(D); Dkt. No. 52-21 at 38-39. Plaintiff had approximately ten files under the bottom bunk bed that could not fit into the locker, about which he informed Defendant Daby. *See id.* at ¶ 6(F); Dkt. No. 52-21 at 29-30. Plaintiff approached Defendant Daby about the inability to fit all his files in the locker, while standing ten feet away from Defendant Daby's desk and off to its side. *See* Dkt. No. 52-21 at 65. Plaintiff alleged that Defendant Daby said she knew Plaintiff "had all the legal papers because he was a snitch and . . . that she knew all about him suing the guys over at Franklin and Bare Hill." *See* Dkt. No. 1 at ¶ 6(G) (internal quotation marks omitted). Defendant Daby also stated that "she did not want [a] snitch around [and] that she would have [Plaintiff] out of [Adirondack] by the end of the day," at which point she told Plaintiff to move away from her desk. *See id.* at ¶¶ 6(H)-(I) (internal quotation marks omitted).

Defendant Daby disputes the facts surrounding the alleged misconduct. Defendant Daby claims that the first time she had any knowledge of Plaintiff was on May 14, 2007, when she saw him sitting in a chair in the middle of a doorway to the Barn. *See* Dkt. No. 52-3 at ¶¶ 8-9. Defendant Daby instructed Plaintiff to move out of the doorway due to safety concerns. *See id.* at ¶ 11. On the morning of May 15, 2007, Defendant Daby was inspecting the Barn for cleanliness when she noticed that Plaintiff was sitting on his bed, writing on something. *See id.* at ¶¶ 14-15. Defendant Daby noted that the bed was unmade and that a pair of sneakers and other folders and papers were on the ground. *See id.* at ¶¶ 15-16. Defendant Daby instructed Plaintiff to clean the area, to which Plaintiff responded, "it's good enough, this is my dorm, get the fuck out before I throw you out." *See id.* at ¶ 17. Defendant Daby claims that Plaintiff jumped down from his bunk, shoved his locker at her, and said, "get the point bitch." *See id.* at ¶ 18. Plaintiff denies

Defendant Daby's version of the incident. *See* Dkt. No. 52-21 at 91. In fact, Plaintiff claims that it was physically impossible for him to push the locker towards Defendant Daby. *See* Dkt. No. 59-2 at 6. Shortly after Plaintiff returned to his cell, he was escorted to a holding cell in the Special Housing Unit ("SHU") and, later that day, transferred to Upstate Correctional Facility ("Upstate C.F."). *See* Dkt. No. 1 at ¶¶ 6(I)-(K).

On May 17, 2007, Defendant Daby issued Plaintiff a misbehavior report, which he contends to be false. *See id.* at ¶ 6(L)-(M). The report alleged that Plaintiff "threatened and harassed Daby; and in doing so created a disturbance by cursing and shoving a locker at her." *See id.* at ¶ 6(L). Specifically, the report charged Plaintiff with violating Rules 104.13 (creating a disturbance), 102.10 (threats), and 107.11 (harassment). *See* Dkt. No. 52-15 at 7. Plaintiff contends that Defendant Daby knew of his two prior lawsuits against prisoner officials at Bare Hill C.F. and Franklin C.F. Specifically, Plaintiff contends that Defendant Daby could have learned about his prior lawsuits by seeing related legal files in his possession or through institutional records. *See* Dkt. No. 59-2 at 6.

Defendant Daby denies having knowledge of Plaintiff's prior lawsuits against prison officials. Defendant Daby has emphasized that she has only worked at Adirondack C.F., never worked at Bare Hill C.F. or Franklin C.F., never had any discussions with other DOCCS employees concerning Plaintiff or his complaints, does not personally know any employees at Bare Hill C.F. or Franklin C.F., and has never reviewed documents concerning Plaintiff or his lawsuits. *See* Dkt. No. 52-3 at ¶¶ 2, 25-28, 33-34. Similarly, Corrections Officers Dann, Daily, and Charland, who were defendants in Plaintiff's prior lawsuit, stated that they have never spoken with Defendant Daby. *See* Dkt. No. 52-11; Dkt. No. 52-6 (Dann Decl.) at ¶¶ 1-6; Dkt. No. 52-5 (Daily Decl.) at ¶¶ 1-8; Dkt. No. 52-4 (Charland Decl.) at ¶¶ 1-8.

## B.      Investigation

Plaintiff selected an assistant at Upstate C.F., non-party Officer Hebert, to help investigate and defend against Defendant Daby's misbehavior report. *See* Dkt. No. 1 at ¶ 6(N); Dkt. No. 52-21 at 93; Dkt. No. 52-15 at 6. Plaintiff asked Officer Hebert to obtain certain interviews, documents, and identifications. *See* Dkt. No. 52-15 at 20–22. Plaintiff admitted to receiving everything requested in the memorandum; he does not believe, however, that Officer Hebert interviewed any inmates who witnessed the incident on May 15, 2007. *See* Dkt. No. 1 at ¶¶ 6(P)–(R); Dkt. No. 52-21 at 94-98.

Defendant Rocque and non-party Officer McDougall were asked to assist Officer Hebert with investigative tasks. *See* Dkt. No. 52-17 at 13–17, 37; Dkt. No. 52-7 (Woodruff Decl.) at ¶ 13; Dkt. No. 52-8 (Rocque Decl.) at ¶ 4. Thus, on May 18, 2007, Defendant Rocque and Officer McDougall arrived at the Barn during "count time" and asked approximately twenty inmates whether they saw, heard, or remembered anything about Plaintiff and Defendant Daby during the morning of May 15, 2007. *See* Dkt. No. 52-8 at ¶¶ 6-8. Officer McDougall asked to talk to any such inmates and further stated that inmates could privately speak with Defendant Rocque at the Tier Hearing Office. *See id.* at ¶¶ 8-9. No inmate had any questions, identified himself as having witnessed anything surrounding the incident, or reported to the Tier Office. *See id.* at ¶¶ 12-13.

During the exchange between Plaintiff and Defendant Daby, there were several inmates present in the Barn. Plaintiff saw an inmate by the name "K.P.," who was later identified as Inmate Green. *See* Dkt. No. 52-21 at 42, 45. At a later time, after the disciplinary hearing was conducted, Plaintiff discovered that Inmate Johnson witnessed parts of the incident. *See id.* at 42; Dkt. No. 52-19 (Johnson Letter dated 10/1/2007) at 12-13. Inmate Johnson was returning to the Barn when he heard Plaintiff and Defendant Daby talking at Defendant Daby's desk. *See* Dkt.

No. 52-19 at 12-13.  Inmate Johnson noted that Plaintiff was neither loud nor disrespectful.  *See id.*  Moreover, Inmate Johnson claimed that had he known what Plaintiff was accused of, he would have testified that Plaintiff was innocent of those charges.  *See id.*

Pursuant to Plaintiff's request, Defendant Rocque interviewed Inmate Green on May 18, 2007 at the Tier Hearing Office at Adirondack C.F.  *See* Dkt. No. 52-8 at ¶ 15.  Inmate Green stated that "[he couldn't] help Kotler with this matter" and signed a refusal form.  *See id.* at ¶¶ 17, 19; Dkt. No. 52-15 at 28.  Defendant Rocque stated that he asked Inmate Green to provide a specific reason for his refusal, but Inmate Green declined.  *See* Dkt. No. 52-8 at ¶ 20.  Also per Plaintiff's request, Defendant Rocque interviewed Inmate Johnson.  *See id.* at ¶ 23.  Although Inmate Johnson refused to testify and signed a refusal form indicating that he "did not see anything," s*ee id.* at ¶ 25; Dkt. No. 52-15 at 27, as indicated above, he later elaborated that Plaintiff did not perform the alleged misconduct and that he would have testified on his behalf had he known that Plaintiff was being punished for the alleged incident with Defendant Daby.

## C.    Disciplinary Hearing

On May 21, 2007, Defendant Woodruff conducted a disciplinary hearing on Defendant Daby's misbehavior report dated May 17, 2007.  *See* Dkt. No. 1 at ¶ 6(T).  Plaintiff requested that Defendant Daby, Officers Wright and King, and Sergeant Whitney testify at the Tier Hearing.  *See* Dkt. No. 52-19 at 8-9, 35, 42.  Defendant Woodruff spoke with Inmates Johnson and Green privately to verify their refusals to testify.  *See* Dkt. No. 52-7 at ¶ 19.  When Plaintiff learned that Defendant Woodruff had spoke with Inmates Johnson and Green, he objected to Defendant Woodruff's involvement as both an assistant and a hearing officer.  *See* Dkt. No. 52-19 at 12-13.  Moreover, Plaintiff stated that he was dissatisfied with the refusal forms signed by Inmates

Johnson and Green and requested that the two inmates state their refusals on the record, which Defendant Woodruff denied. *See id.* at 17. In his complaint, Plaintiff also contends that Defendants Woodruff and Rocque failed to encourage other inmates to testify. *See* Dkt. No. 1 at ¶ 6(T).

Concerned about what he perceived to be a biased investigation, Plaintiff claimed that his right to select an assistant for the investigation was violated when Defendant Rocque and Officer McDougall were summoned to take over Officer Hebert's duties, since these were officers whom Plaintiff did not select. *See* Dkt. No. 52-19 at 14, 37. Defendant Woodruff responded that the assistance was conducted through the Tier Office at Adirondack C.F. *See id.* at 17. Since the incidents underlying the misbehavior report occurred at Adirondack C.F. and the hearing was conducted at Upstate C.F., where Plaintiff was housed pending a disposition on the report, officers at Adirondack C.F. were appointed to carry out the investigation. *See id.* at 16-17.

At the hearing, Defendant Woodruff found Plaintiff guilty of all charges except for harassment, and sentenced him to four months of confinement in the SHU, loss of commissary, recreation, phone privileges, and good time credits, and assigned him an elevated security classification. *See id.* at 58; *see also* Dkt. No. 1 at ¶ 6(S). Defendant Woodruff reasoned that Plaintiff's behavior could not be tolerated in a prison. *See* Dkt. No. 52-7 at ¶ 26; Dkt. No. 52-15 at 2-4.

Plaintiff appealed the Tier III hearing disposition to Defendant Venettozzi, acting director of special housing/inmate disciplinary program. *See* Dkt. No. 52-18. On August 13, 2007, Defendant Venettozzi affirmed the hearing disposition. *See id.* at 1. In November of 2007, Plaintiff submitted a letter requesting a reconsideration of his appeal, which was denied on April 2, 2008 by Defendant Bezio, director of special housing/inmate disciplinary program. *See* Dkt.

No. 52-19.  The outcome of the Tier 3 hearing has neither been reversed or expunged.  *See* Dkt. No. 52-20 at 1.

Plaintiff ultimately served three months and twenty-four days in SHU.  *See* Dkt. No. 52-21 at 62.  Plaintiff contends that because of his SHU confinement, he was not able to communicate with his mother and daughter as frequently as he could while incarcerated with the general prison population.  *See id.* at 108, 115-18.  Plaintiff alleged that Defendants Venettozzi and Bezio "failed to adequately investigate [the misbehavior report] and did not take reasonable steps to have it investigated."  *See* Dkt. No. 1 at ¶ 6(Y).

**D.      Magistrate Judge Hummel's Report-Recommendation and Order**

In their motion for summary judgment, Defendants presented the following arguments: (1) no rational jury could find in Plaintiff's favor on his First Amendment retaliation claim; (2) Plaintiff was afforded all process that was due at his disciplinary hearing; (3) Defendants are entitled to qualified immunity; (4) the Eleventh Amendment bars Plaintiff's claims against Defendants in their official capacities; and (5) Plaintiff's request for injunctive relief is improper, barred by the Eleventh Amendment and prohibited by the rule set forth in *Heck v. Humphrey*.  *See* Dkt. No. 52-22.  In a December 3, 2012 Report-Recommendation and Order, Magistrate Judge Hummel recommended that the Court grant Defendants' motion in its entirety and dismiss Plaintiff's complaint with prejudice.  *See* Dkt. No. 61.

**E.      Plaintiff's objections**

In his objections to Magistrate Judge Hummel's recommendations, Plaintiff first argues that Magistrate Judge Hummel erred in finding that the protected conduct and adverse actions

taken against him lacked a causal connection. *See* Dkt. No. 67 at 11. Specifically, Plaintiff

argues that Magistrate Judge Hummel improperly focused on the fact that Plaintiff did not

establish how Defendant Daby acquired her knowledge about his prior lawsuits. *See id.* Instead,

Plaintiff claims that his allegation regarding Defendant Daby's statement concerning his prior

litigation activity was sufficient, standing alone, to support his retaliation claim. *See id.* at 11-12.

Further, Plaintiff argues that, since Magistrate Judge Homer, who was previously assigned to this

case, denied Defendants' motion to dismiss, the law of the case doctrine precludes a finding that

there was an insufficient causal connection to establish his First Amendment retaliation claim.

*See id.* at 13-14.

Thereafter, Plaintiff argues that Magistrate Judge Hummel erred in finding that he failed

to make a showing of an atypical and significant hardship sufficient to implicate a due process

interest, "notwithstanding the fact that the defendants, in making their motion, conceded

otherwise." *See id.* at 14. As to his procedural due process claim, Plaintiff argues that the

Report-Recommendation and Order improperly finds that "he received the assistance necessary

for him to secure witnesses and confront the accusations made." *See id.* at 16. Moreover,

Plaintiff claims that Magistrate Judge Hummel incorrectly noted that Plaintiff did not make any

additional requests for assistance. *See id.* (citing Tier III Hearing Transcript at 32, 35, 42-43, 45-

46, 55-56).

Next, Plaintiff argues that, "[i]n a manner that seems, with all due respect, quite confusing

and ambiguous, Judge Hummel, having found that the plaintiff did receive proper assistance, goes

on to find that a question of fact remains as to whether or not the hearing officer was fair and

impartial by virtue of the manner in which he secured and accepted the witness refusal form from

inmate Johnson." *See id.* at 18-19. Regarding Defendants Venettozzi and Bezio's personal

involvement, Plaintiff argues that, contrary to Magistrate Judge Hummel's recommendation, they engaged in activities other than simply affirming the results of the Tier III hearing. *See id.* at 19.

**F.    Defendants' objections**

Although the Report-Recommendation and Order recommends granting Defendants' motion in its entirety and dismissing Plaintiff's complaint with prejudice, Defendants filed objections asserting that, although they agree with the recommendation that the complaint be dismissed, Magistrate Judge Hummel erred "with regard to one element of plaintiff's due process claim and was incomplete in terms of defendants' qualified immunity defense." *See* Dkt. No. 68. As to Plaintiff's due process claim, Defendants argue that Magistrate Judge Hummel "erred in opining that the hearing disposition was not supported by 'some evidence' of guilt and misapplied an unnecessarily heightened standard in this regard." *See id.* at 5. Defendants contend that it was clear error for the Report-Recommendation and Order to "recommend that 'if Kotler has established a protected liberty interest,' then there is a question of fact (under the 'fair and impartial hearing officer' issue) regarding whether the disciplinary disposition was based upon constitutionally sufficient evidence of guilt." *See id.* Further, Defendants argue that, "[i]n this regard, the Magistrate mistakenly applied an unnecessarily heightened standard requiring that the evidence of guilt relied upon by the hearing officer be undisputed to constitute 'some reliable evidence.'" *See id.* (citing Dkt. No. 61 at 20 (noting that CO Daby's testimony and misbehavior report were contradicted by Kotler's testimony)). Defendants argue that, if the Court were to find that there was insufficient evidence of guilt simply because Plaintiff's own testimony contradicted the allegations in the misbehavior report and the testimony of its author, no disciplinary conviction could pass constitutional muster whenever the inmate's own testimony disputes that of

the corrections official issuing the misbehavior report. *See id.* at 6. Finally, Defendants contend that, "[t]o the extent that the Magistrate further reasoned that the reliability of the evidence leading to plaintiff's conviction might have been further undermined if one of plaintiff's witnesses who had refused to testify had been called as a witness, . . . the Magistrate already properly determined that the refusal forms in this regard were properly obtained and relied upon by the hearing officer." *See id.*

Second, regarding the issue of qualified immunity, Defendants argue that, even if there is an issue of fact as to whether the "some evidence" standard was satisfied, they are nevertheless protected by qualified immunity. *See id.* at 7. As such, Defendants argue that Magistrate Judge Hummel should have completed the qualified immunity analysis by addressing the question of whether their conduct violated clearly established rights of which a reasonable official would have known. *See id.*[2]

## III. DISCUSSION

### A.    Relief under 42 U.S.C. § 1983

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y.

---

[2] In this Report-Recommendation and Order, having found no constitutional violation, Magistrate Judge Hummel did not complete the second prong of the qualified immunity analysis. *See* Dkt. No. 61 at 26.

1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)).  As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions.  *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

## B.     Standard of review

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. §636(b)(1).  However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge."  28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* at 36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a

motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c) (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2502, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (qquoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, *1 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment." *Lee v.*

*Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**C.     Retaliation**

Plaintiff argues that Magistrate Judge Hummel erred in finding that the protected conduct and alleged adverse action lacked a causal connection. *See* Dkt. No. 67 at 11-12. Specifically, Plaintiff argues that Magistrate Judge Hummel improperly required him to prove from where Defendant Daby acquired knowledge about his prior litigation history. *See id.* at 11. Rather, Plaintiff asserts that he was only required to establish that Defendant Daby did know about his prior lawsuits against prison officials, which he claims he accomplished through his allegation regarding her statements to him. *See id.*

The Second Circuit has held that retaliation against a prisoner for filing a grievance is a violation of that prisoner's First Amendment right to petition the government for redress. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (citing *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988)). To establish a claim of retaliation, the plaintiff must establish "(1) that the disciplined conduct was constitutionally protected, and (2) that his punishment was motivated, in whole or in part, by his conduct – in other words, that the prison officials' actions were substantially improper retaliation." *Id.* Additionally, there must be a causal connection between the protected activity and the adverse action. *See Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)).

Contrary to Plaintiff's arguments, Magistrate Judge Hummel correctly determined that the conclusory allegation that Defendant Daby retaliated against him for lawsuits he filed against

other prison officials while he was housed at various other facilities is insufficient to survive Defendants' motion for summary judgment. Defendant Daby's affidavit, which contends that she had no knowledge of any other lawsuits or complaints that Plaintiff brought while housed at other prisons, is supported by the affidavits of corrections officers at other facilities, who were named as defendants in some of Plaintiff's other lawsuits. These individuals confirmed that they do not know Defendant Daby, have never worked with her, and have never spoken with her. Plaintiff's conclusory allegations to the contrary are insufficient to withstand Defendants' motion for summary judgment as to this claim.

Moreover, only two of Plaintiff's lawsuits against prison officials were filed prior to the alleged retaliatory conduct. The first was commenced in November of 1998 and alleges constitutional violations that occurred while Plaintiff was housed at Oneida Correctional Facility ("Oneida C.F."). *See Kotler v. Hollins*, No. 9:98-cv-1707 (DNH/DEP). The second complaint, filed in the New York State Court of Claims, is dated April 16, 2007, and alleges various constitutional violations that occurred while Plaintiff was housed at Franklin C.F. *See* Dkt. No. 52-12. Although temporal proximately can, in certain cases, "serve as circumstantial evidence of retaliation," in light of the facts discussed above, Plaintiff's circumstantial evidence is not sufficiently compelling to defeat Defendants' motion for summary judgment. *See Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003); *see also Jackson v. Goord*, No. 06-CV-6172, 2011 WL 4829850, *17 (W.D.N.Y. Oct. 12, 2011) (citation omitted).

Based on the foregoing, the Court finds that Magistrate Judge Hummel correctly recommended that the Court grant Defendants' motion for summary judgment as to Plaintiff's First Amendment retaliation claim.

**D.     Due Process**

The Fourteenth Amendment to the Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).

The due process protections afforded a prison inmate do not equate to "'the full panoply of rights' due to a defendant in a criminal prosecution." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (quotation omitted). "Nevertheless, an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 556, 563-67 (1974)). "Since *Wolff*, the Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'" *Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985)). "This standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling." *Id.* (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). Nevertheless, as the Second Circuit has explained, "the 'some evidence' standard requires some 'reliable evidence.'" *Id.* (quotation and other citation omitted).

The some evidence standard, detailed in *Superintendent v. Hill*, 472 U.S. 445 (1985), is satisfied if "'there is any evidence in the record that supports' the disciplinary ruling." *Sira*, 380

F.3d at 69 (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). "[P]rison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Hill*, 472 U.S. at 456 (requiring only a "modicum of evidence" to support a hearing decision).

In the present matter, Defendants contend that, although Magistrate Judge Hummel correctly determined that Plaintiff's due process claim should be dismissed, he "erred in opining that the hearing disposition was not supported by 'some evidence' of guilt and misapplied an unnecessarily heightened standard in this regard." *See* Dkt. No. 68 at 5. Specifically, Defendants "respectfully submit that it was clear error for the Magistrate to recommend that 'if Kotler has established a protected liberty interest,' then there is a question of fact (under the 'fair and impartial hearing officer' issue) regarding whether the disciplinary disposition was based upon constitutionally sufficient evidence of guilt." *See id.* Defendants argue that "the Magistrate mistakenly applied an unnecessarily heightened standard requiring that the evidence of guilt relied upon by the hearing officer be undisputed to constitute 'some reliable evidence.'" *See id.* Plaintiff, however, argues that Magistrate Judge Hummel erred in finding that he had a fair and impartial hearing officer, a reasonable opportunity to call witnesses, and that there was sufficient evidence to support the disposition. *See* Dkt. No. 67 at 16-19.

After reviewing the Tier III hearing transcript, Defendant Woodruff's written disposition, and the parties submissions, it is clear that Plaintiff was afforded all of the protections required by due process. Plaintiff claims that Defendants Woodruff and Rocque violated his rights by failing to make reasonable and good faith efforts to assist him in securing his witnesses. *See id.* at 18. The record, however, makes clear that Inmates Johnson and Green signed forms indicating that

they refused to testify on his behalf.[3]  Although Inmate Johnson later submitted a letter indicating that he would have testified for Plaintiff, he also indicated that no staff member did or said anything to discourage him from testifying.  *See* Dkt. No. 52-19 at 12-13.  Further, even though Inmate Johnson states that Plaintiff did not commit the alleged infraction, he does not indicate how he knows that Plaintiff was innocent of the alleged conduct.  *See id.*

Moreover, the hearing transcript and disposition form make clear that Plaintiff was afforded the right to call witnesses, present evidence, and that Defendant Woodruff was fair and impartial.  Throughout the hearing, Plaintiff presented several documents in support of his case, called witnesses and was allowed to pose questions.  *See* Dkt. No. 52-17.  Defendant Woodruff allowed Plaintiff to pose all relevant and non-repetitive questions he wanted to the witnesses.  *See id.*  Moreover, Plaintiff was permitted to read a statement into the record.

As to Magistrate Judge Hummel's recommendation that Plaintiff's "disciplinary disposition was not based on reliable evidence of his guilt," the Court disagrees.  *See* Dkt. No. 61 at 20-21.  Defendant Woodruff's written disposition states that the evidence he relied upon was the testimony of Defendant Daby, Sergeant Whitney, Lieutenant Rocque and Officer King, which he found to be credible, as well as Defendant Daby's written report.  *See* Dkt. No. 52-18 at 24.  Defendant Daby's hearing testimony was consistent with her written report.  Even though Plaintiff provides a very different version of the incident in question, Defendant Woodruff was entitled to make credibility determinations in rendering his decision and Plaintiff's own testimony to the contrary does not render the disposition unsupported by some evidence.  *See Breazil v. Bartlett*, 998 F. Supp. 236, 244 (W.D.N.Y. 1997) (citations omitted); *see also Rudd v. Sargent*, 866 F.2d

---

[3] Inmate Johnson's refusal form specifically stated that he was in "5-Bottom" at the time of the alleged incident and, therefore, he "did not see anything."  *See* Dkt. No. 52-19 at 7.

260, 262 (8th Cir. 1989) (holding that statements in officer's disciplinary report constitute "some evidence" even though officer did not witness alleged violation); *White v. Kane*, 860 F. Supp. 1075, 1078 (E.D. Pa. 1994) (finding that a guard's written report constitutes "some evidence"); *aff'd*, 52 F.3d 319 (3d Cir. 1995); *Ames v. Artuz*, No. 86 CIV. 1924, 1989 WL 54114, *6, n.10 (S.D.N.Y. May 16, 1989) ("To discount or discredit [the officer]'s report . . . as evidence would necessarily require . . . an independent assessment of the charging officer's credibility and to weigh all the evidence adduced at the disciplinary hearing accordingly — a function neither required nor encouraged by *Hill*"); *Hodges v. Jones*, 873 F. Supp. 737, 744 (N.D.N.Y. 1995) ("Due Process does not require that the hearing officer's credibility assessments or weighing of the evidence be evaluated; rather, the relevant standard is whether there is some evidence in the record to support the disciplinary decision") (citing *Superintendent, Massachusetts Corr. Inst. v. Hill*, 472 U .S. 445, 455 (1985)). Moreover, although Officer King did testify that Plaintiff "probably has more legal work than I've ever seen an inmate have," contrary to Magistrate Judge Hummel's recommendation, this statement does not render Defendant Daby's misbehavior report and testimony that Plaintiff shoved his locker at her implausible. *See* Dkt. No. 52-17 at 40-41. Defendant Daby stated in her misbehavior report and testified that Plaintiff "shoved" the footlocker at her in a threatening manner. *See id.* at 22-24. Defendant Daby does not indicate how far Plaintiff was able to "shove" his footlocker other than the fact that it was far enough for her to be required to move out of the way. As Defendants correctly contend, the evidence presented at the hearing and relied upon by Defendant Woodruff satisfies the "some evidence" standard.

Based on the foregoing, the Court rejects Magistrate Judge Hummel's Report-Recommendation and Order insofar as he recommended finding that the Tier III hearing

disposition was not based on "reliable evidence of guilt" sufficient to satisfy the "some evidence" standard. As such, the Court finds that the undisputed facts establish that Plaintiff was afforded all the process he was due and grants Defendants' motion for summary judgment on this ground.

**E.     Law of the case**

Plaintiff argues that several of Magistrate Judge Hummel's recommendations should be rejected because they "violate" the law of the case doctrine. *See* Dkt. No. 67 at 13. Plaintiff bases this argument on recommendations made by Magistrate Judge Homer, which were adopted by Judge McAvoy, in adjudicating Defendants' earlier motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See id.* at 13-14.

For purposes of applying the law of the case doctrine, courts have long recognized the distinction between pre-discovery motions, based on an undeveloped record, and post-discovery motions for summary judgment. *See, e.g., DiLaura v. Power Authority*, 982 F.2d 73, 76-77 (2d Cir. 1992) (findings made by a court for the purpose of injunctive relief are not the law of the case for subsequent litigation on the merits); *Clalit Health Serv. v. Israel Humanitarian Found.*, 385 F. Supp. 2d 392, 398 n.8 (S.D.N.Y. 2005) (holding that a pre-discovery determination on a motion to dismiss not the law of the case for purposes of summary judgment); *Colonial Tanning Corp. v. Home Indem. Co.*, 780 F. Supp. 906, 911-12 (N.D.N.Y. 1991) (holding that a prior ruling in context of a discovery dispute did not establish law of the case with respect to unrelated issues which court had merely assumed for purposes of addressing the disputes, but which were not critical for resolution of the dispute).

In light of this authority, the Court holds that any findings made in the decision denying Defendants' motion to dismiss pursuant to Rule 12(b)(6) are not law of the case for purposes of

the present motion for summary judgment brought pursuant to Rule 56. As such, the Court finds that Plaintiff's arguments regarding the application of the law of the case doctrine are without merit.

## F.     Qualified immunity

In his Report-Recommendation and Order, having found that Defendants did not violate any of Plaintiff's constitutional rights, Magistrate Judge Hummel declined to determine whether Defendants would be entitled to qualified immunity as an alternative ground for granting their motion. *See* Dkt. No. 61 at 25-26. In their objections, Defendants claim that, since Magistrate Judge Hummel erred in his analysis of Plaintiff's due process claim, it may now be necessary to address their qualified immunity argument. *See* Dkt. No. 68 at 7. Although the Court has found that Defendants did not violate Plaintiff's due process rights, the Court will nevertheless address the issue of qualified immunity.

"The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

> For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Mollica v. Volker*, 229 F.3d 366, 370-71 (2d Cir. 2000) (quoting *Anderson v. Creiehton*, 483 U.S. 635, 638 (1987)) (internal quotations omitted). "Where the right at issue in the circumstances confronting police officers . . . was clearly established but was violated, the officers will nonetheless be entitled to qualified immunity 'if . . . it was objectively reasonable for them to believe their acts did not violate those rights.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quotation and other citation omitted).

"Although a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent." *Manganiello v. City of New York*, 612, F.3d 149, 165 (2d Cir. 2010) (citations omitted). "With respect to both the legal question and the matter of competence, the officials' actions must be evaluated for objective reasonableness. . . . That is, '[e]ven if the right at issue was clearly established in certain respects . . . an officer is still entitled to qualified immunity if "officers of reasonable competence could disagree" on the legality of the action at issue in its particular factual context.'" *Id.* (quotations omitted).

The determination of whether an official's conduct was objectively reasonable is a mixed question of law and fact. *See Zellner*, 494 F.3d at 367 (citing *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)) (other citations omitted). "The ultimate question of whether it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, *i.e.*, whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court. However, '[a] contention that . . . it was objectively reasonable for the official to believe that his acts did not violate those rights has "its principle focus on the particular facts of the case."'" *Id.* (quotation and other citations omitted).

If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quotation omitted).

As Defendants correctly note, "'neither this circuit nor the Supreme Court has clearly defined standards for determining what constitutes "some evidence" in the context of prison disciplinary hearings; rather, decisions have addressed the problem piecemeal, focusing on the discrete problems raised by the facts of particular cases.'" *Woodard v. Shanley*, No. 12-361-PR, 2012 WL 6176756, *2 (2d Cir. Dec. 12, 2012) (quoting *Sira*, 380 F.3d at 81). Moreover, the "some evidence" standard has been found to be satisfied when the hearing official relies almost solely on the incident report without interviewing the officer(s) who wrote the misbehavior report. *See Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214 (W.D.N.Y. 2010) (citations omitted). In light of the foregoing, the Court finds that a reasonable hearing officer would have considered the "some evidence" requirement to be satisfied by the witnesses' testimony, Plaintiff's testimony and the detail incident report. *See id.* at 215. Finally, Defendants Venettozzi and Bezio are also entitled to qualified immunity because an objectively reasonable official in their position would have considered the "some evidence" standard satisfied in affirming Plaintiff's Tier III disposition on appeal.

**G.     Remaining claims**

Having reviewed the remainder of Magistrate Judge Hummel's Report-Recommendation and Order, the Court finds that Magistrate Judge Hummel correctly recommended that the Court should grant Defendants' motion for summary judgment as to the due process claims against Defendants Venettozzi and Bezio for their lack of personal involvement.  Further, Magistrate Judge Hummel correctly recommended that the Court should find that, to the extent that Plaintiff seeks monetary damages and injunctive relief for past injuries against Defendants in their official capacities, Plaintiff's claims are barred by the Eleventh Amendment.

## IV. CONCLUSION

After carefully considering Magistrate Judge Hummel's Report-Recommendation and Order, the parties' objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Hummel's December 3, 2012 Report-Recommendation and Order is **ADOPTED in part and REJECTED in part** as set forth herein;[4] and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

---

[4] Magistrate Judge Hummel's Report-Recommendation and Order is only rejected insofar as it recommends finding that the Tier III hearing disposition was not supported by "some evidence" and applies an unnecessarily heightened standard in this regard.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  March 28, 2013
       Albany, New York

Mae A. D'Agostino
U.S. District Judge